OPINION of tbe Court, by
judge Trimble.
— 1⅛ has been assigned for error, by the appellant, (who was defendant in the court below,) that the court improperly granted a new trial on the motion of the plaintiff, when the verdict was for the defendant. From the record it appears that a verdict was found for the defendant, which, on motion of the plaintiff, was set aside, and a new trial granted him on payment of costs, without any exception being taken by the defendant to the opinion of the court. If the court had erred in granting the new trial, the defendant ought, by bill of exceptions, to have furnished the grounds of his objection to their opinion ; this has not been done, and we miist thereforé presume the new trial was properly granted. We cannot, by law, reverse the judgment of the inferior court, unless we can see from the record it was erroneous. The record furnishes no data from which that can be seen, and the presumption of law stands in favor of thsir judgment until the contrary appears.
The second and third assignments of error call iñ question the opinions of the inferior court, as expressed in what is called by the appellant a bill of exceptions, on the subject of the competency of James Nichols, jun. as a witness. Before we can enquire into the opinion of that court respecting the competency of the witness a previous question must be settled : Has the bill of exceptions, as it is called, been either certified or verified by affidavit, according to law, or made a part of the record, so as to give it validity and entitle it to the consideration of this court as a bill of exceptions ?
It appears from the record that the bill of exceptions was tendered to the court, who refused to sign it; and the court assigns as a reason for said refusal, that the bill of exceptions contains a “ garbled state of the testimony.” It further appears from the bill of exceptions^, which is made part of the record, that it was signed by three of the by-standers, who certify that they saw it tendered to the court, who refused to sign it; but these by-standers do not certify it is true ; nor have any affidavits been taken to verify its truth. The act of 1800, entitled “an aet to amend the laws of proceedings i*s *299 givil cases,”' sec. 4th, provides, “that if any inferior court do refuse to sign a bill of exceptions tendered tó them, and the same is certified and signed by the bystanders, as the law requires, the said court shall permit the said bill to be filed and become a part of the record ; and if they refuse, the court of appeals may, when such cause is brought before them by writ of error or appeal, upon proper affidavits of such refusal, in their discretion admit such bill of exceptions as part of the record, "When the court shall certify, as cause of their refusal to sign such bill, that its statement is not true, and by-standers shall sign the bill certifying its truth, affidavits may be taken by either party as to its truth, &c. This section of the act is very obscurely penned, and there is some difficulty in ascertaining its true meaning. But, from a consideration of all its parts, which is certainly the most . , . P ,, r . 7 . , . . *\11 . rational mode of discovering the legislative will, it appears the legislature contemplated two distinct mis-chiefs, for each of which they have provided an appropriate remedy. The first member of the section seems to contemplate that the inferior courts might not only refuse to sign the bill of exceptions tendered, but might also, after it had been certified and signed by the bystanders, as the law requires, refuse to permit it to be made part of the record ; in which case the party would lose the benefit thereof, by its not appearing in the record before the appellate tribunal. The first member of the section, therefore, enjoins the inferior court to permit the bill of exceptions, thus signed and certified by the by-standers, to be made part of the record; But, to prevent the possibility of injury to the party if the inferior court shall disobey this injunction of the statute, it is further provided, that “ if they refuse, (to permit the bill to be made part of the record,) the court of appeals may, when such cause is brought before them by writ of error or appeal, upon proper affidavit of such refusal, in their discretion admit such bill of exceptions as a part or the recordit not having been made a part thereof in the inferior court. The affidavits mentioned in this member of the section are to be taken, not for the purpose or ventying the truth or the statements contained in the bill of exceptions, but for the purpose of proving the refusal of the inferior court to admit it as a part of the record. The verity of statements in the *300 ease embraced in this member of the section, is to ap= pear from the bill being “ certified and signed by the by-standers, as the law rquires.” How does the law require it to be certified and signed ? Will a certificate °f its being presented to the court, and that they refused to sign it, be such a certificate as the law requires ?• Surely not, as is evident from the first member of the section itself; which, in not requiring the truth of the statements to be verified by affidavits, as is required in case provided for in the second member of the section, strongly implies that they are to be verified by the certificate of the by-standers that the statements are true< This seems the only rational meaning which can be ascribed to the terms, “ certified according to law.” In the case here supposed, the by-standers having cer-the truth of the statements contained in the bill, ar>d the court not having certified them to be untrue, the law gives credence to the certificate of the bystanders-
The intereft 0^sa to* ⅛? competency-!* bias, influence, to
xc render witnefs incom-tereft’muft be the hile of ba“5,tocdae1' p"fe_ ‘m 0 e"
. if a witnefs ,s equally mte-fideSj that ⅛, refponfibie to Plaintlff¡or <⅛-ing to the event °f the caufe, he 'dsec°|”py')nt °r
A man iarid or”V fold jlaves, and executed a vmtmg title, may be a witnefs to prove he had compeiiabie to give fuch evi- '
e fon íng and opinions of the judge, dehver-a queftion* of new trial, aré «"-rtVfthe record when no bill of excep-to"theaSo'hdon ofché^oun.1011
The second member of the section embraces a different case, and is founded on the predication that the in-^er‘or C0Llrt, refusing to sign the bill of exceptions, which has been “certified and signed by the by-standers, as the law requires,” have, in obedience to the, injunctions of the statute, permitted it to be made part of the record, but have certified, as the cause of their refusal to sign it, that its statement is not true. In the case here intended to be provided for, the by-standers having signed the bill “ certifying its truth,” the act declares affidavits may be taken by either party as to its truth : the by-standers and the court, in the case here supposed, are at issue by their counter-certificates ; and which is right, is to be determined by affidavits. Upon the certificates alone, the law, if it will not indulge a presumption in favor of the certificate of the inferior court against that of the by-standers, will consider the matter as in dubio between them, and that it cannot be affirmed by the appellate tribunal to be either true or false. The second member of the section, however, only provides for the taking of affidavits where the court certify, as cause for refusing to sign the bill of exceptions, “-that its statement is not true from which it may fairly be infered, that although the court have refused to sign it, but without certifying, as cause for *301 such refusal, that its statement is not true, yet if the by-_ slanders certify its truth and sign it, and the court permit it to be made part of the record, its truth shall, without affidavits, be presumed by the appellate tribunal. But unless the by-standers certify its truth, such presumption cannot be indulged, either in the case provided for in the first member of the section, or in those embraced by the latter ; so that had the judge, in the case now before us, certified, as the cause of his refusal to sign the bill of exceptions, that its statements were untrue, or that it contained a “ garbled state of the testimony,” without certifying any thing more on the subject, we would be of opinion that the bill of exceptions ought to be wholly disregarded. The judge, however, does not certify that its statement is untrue generally, without further explanation, but states that it contains a garbled state of the testimony, aud then proceeds to state wherein the testimony given differed from the statement contained in the bill of exceptions ; which statement of the testimony by the judge he sealed and jmade part of the record. We are of opinion, therefore, that a fair and liberal construction of the record, and of the act of assembly, will authorise us to presume that the statements in the bill of exceptions are true, so far as they are not corrected or contradicted by the judge ; and that the statements made by the judge, together with such statements in the bill of exceptions as are not corrected or contradicted by him, should be considered as containing the truth of the case ; and that, as both the bill of exceptions and the statement of the testimony by the judge are made part of the record, we may fairly and legally adjudicate upon the question thereby submitted. to the decision of this court.
The question is, was James Nichols, jun. a competent witness for James Nichols, sen. the plaintiff in the cause? In deciding this question, the distinction between competency and credibility is important. Many persons are incompetent who are of good credit, and many are competent whose credit is very questionable. Interest goes to the competency; but bias, influence, and ill fame, go to the credibility only. But interest does not in all cases render a witness incompetent; in order to do so, his interest must be on the side of the party falling him to depose — Kennedy vs. Barnett, at the pre *302 sent term. If the witness is equally interested on both, sides, that is, if he is responsible to the losing party⅜ whichever of the two may happen to lose, he is competent to depose between them ; for in that case he has no interest in the event of the suit either way, or, in other words, he will; not be benefited by the party who calls^ him prevailing.
This seems to have been the situation of the witness, James Nichols, jun. It appears, from the bill of exceptions and the judge’s statement, that he had bought the, slaves in contest for and with the property of James Nichols, sen. and had delivered them to him ; and it would, also seem that he had transferred or sold them to Wright. If so, he would be responsible for their value to whichever party lost. But even if this were not the case, he was competent^so far as,the objection of interest extends, upon other grounds. It appears from the record that before he was examined, mutual releases, were executed by and between the plaintiff and the witness, whereby the responsibility of the witness to the plaintiff was done away, and the competency of the wit-, ness to depose for the plaintiff was restored. Whatever he deposed for the plaintiff against the defendant was deposing against his own interest, because it might render him liable to Wright, but could not to the plaintiff ; and he was competent to swear against his own interest. Thus, it has been held that a legatee by a release is a good witness to prove a will — 1 Bur. 423 j and a legatee is a good witness (without a release) against a will, for he swears against his own interest, which he parts with by impeaching the will — 2 Salk. 691. We are therefore of opinion that James Nichols, jun. was not incompetent as a witness for the plaintiff on the, score of interest.
It is insisted, however, that be was incompetent because the parties derived title through him, and because he had executed to the defendant a writing, under, which the defendant holds the slaves.
This objection seems not well founded as to the title o£ the plaintiff, for the witness was offered to prove that the plaintiff claimed not through him, but by title paramount % and that the witness had purchased the slaves for the plaintiff, and with his property. This he was competent to do, n©twithstanding he might in fact have arid *303 and conveyed them to the defendant. It has been ruled by Holt, chief justice, that “ a man that conveys lands may be a witness to prove he had no title, because that is swearing against himself; but he is not compellable to give such evidence” — Ld. Ray, 1008.
The principle of this case applies to the one now be= Fore the court; and goes to shew that the instrument irt Writingexecuted by the witness to the defendant, Wrightj, was no objection to his competency, however it might go to his credit.
It is true it was held by Lord Mansfield that nd person who had signed a paper or deed shall be permitted to give testimony to invalidate it; and he assigns, as a reason for the rule, that every one who is a party to such instrument gives currency to it. But Justice Buller, in the same case, confines the rule to negotiable instruments only; and the reason assigned by Lord Mansfield seems, strictly, applicable only to such cases ; and the distinction taken by J udge Buller was after-wards recognized as law. The rule, thus understood, is consistent with the case ruled by Lord Holt, before noticed. Upon the whole, we are of opinion that, on every ground, James Nichols, jun. was a competent witness for James Nichols, sen.; and that the objections made go only to his credibility.
On the subject of the motion for a new trial, it may be observed that no bill of exceptions was taken to the opinion of the court overruling the motion ; we cannot, therefore, judicially say the court erred in refusing a new trial. It is true the reasoning and opinions of the court, delivered arguendo, upon the question of the new trial, is found in the transcript; but, regularly, this forms no part of the record. If, however, the observations and reasonings of the inferior court on the subject are considered as part of the record, we must take the case as there stated ; and if so, there appears no suffi-•ient cause for granting a new trial.
Judgment affirmed.